## HIRSCHFELDER vs. THE STATE.

1. The 1st and 2d Sections of the Act of 1837, relative to the licensing of pedlers, and the penalty for peddling without a license, being inconsistent with, is repealed by the Act of 1848.

2. The Act of 1848, having prescribed a specific and different penalty for each of the several classes of pedlers, who may violate its provisions, an indictment under it must designate the class to which the accused belongs, otherwise no judgment can be rendered upon it.

ERROR to the Circuit Court of Conecuh. Tried before the Hon. John J. Woodward.

THE plaintiff in error was tried and convicted in the Circuit Court of Conecuh county on an indictment, of which the following is a copy:

" STATE OF ALABAMA——CONECUH COUNTY, }
Circuit Court—Fall Term 1849. }

The grand jurors for said State and County, on their oaths present that Emanuel Hirschfelder, late of said county, being then and there a pedler, did on the first day of September, Eighteen hundred and forty-nine, in said county, sell absolutely to one Abram Russell, Sen'r, and others, two bonnets, and two shawls, and divers other goods and merchandise, of the value of one dollar, without first procuring a license from the Clerk of the County Court of said county—against the peace and dignity of the State of Alabama." To this indictment a demurer was interposed, which was overruled by the court.

WATTS & JACKSON, for the plaintiff in error:

1. It is apparent that the indictment is framed under the statute of 1837.—Clay's Dig. 562, § 27. If not before, this statute was repealed by the revenue bill of 1848—see statutes 1848, p. 32, § 98. This act prescribes a different penalty, and requires more to be paid for the license, and a license obtained under it authorises any person to hawk and peddle for one year, in any county. To hold that the statute of 1837 is not repealed, would present the absurdity of a person being authorised to peddle by one, and prohibited by the other. If it is not repealed, then a license under the act of 1848 would be no protection, although this act says, the license shall be operative for one year from the date thereof.—See Jourdon v. The State, 15 Ala. 746, and cases there cited, to show when one statute repeals another.—See State v. Mosely, 14 Ala. 390 ; State v. Allaire, 14 ib. 435.

2. No conviction can be had under a statute after its repeal. See authorities above cited.

3. The indictment in this case cannot be said to be a good one under the statute of 1848, because it is clear it was framed under the statute of 1837, and it charges but one act to have been done. This is not sufficient under the last statute.—See

Moore v. The State, 16 Ala. 411. It should have shown that he was pursuing the business or employment of a hawker and pedler, in the county of Conecuh, without license, &c.—See also Merriam v. Langdon, 10 Conn. 460, cited by Attorney General; Bacon v. Wood, 28 Conn. 265. The expression found in the indictment, that he was a *pedler*, does not exclude the idea that he was a pedler under license, in another county. A man may be a *gambler*, yet not *gamble* or play cards, in Montgomery county. The use of the word pedler in the indictment, therefore, is not equivalent to saying that defendant pursued and was pursuing, the business or employment of pedling, &c.

BALDWIN, Attorney General, for the State.

1. There was no error in the Circuit Court in overruling the demurrer. All that is necessary is, that in the indictment, an offence against the statute be charged. Precise phraseology is not necessary.—State v. Wimberly, 3 McCord, 193.

2. An offence against the revenue law of 1848, sec. 98, is substantially charged in the indictment. There is no difference in the words " engaged in the business of pedling," and " being then and there a pedler." The words of the indictment are as extensive in their signification as those of the statute.—Moore v. The State, 16 Ala. 413; Merriam v. Langdon, 10 Conn. R. 468; Bacon v. Wood, 2 Scam. R. 266; Carr v. Pray, 13 Pick. 360; Carr v. Messenger, 4 Mass. Rep. 462.

3. A pedler is defined to be " a travelling foot trader; one that carries about small commodities on his back, or in a cart, or wagon, and sells them."—Webster's Dic. (unabridged) 808.

4. If the indictment be defective under the act of 1848, it is good under the act of 1837.—Clay's Dig. 562, § 2; Carr v. Pray, *et ux. supra;* Rev. Sta. Mass. 376, § 3, 4; Moore v. State, *supra.*

PARSONS, J.—The Attorney General contends that if the indictment be defective under the act of 1848, it is good under the act of 1837, (Clay's Digest, p. 562, § 27.) The first section of the latter act (ib. § 26,) authorised the Commissioners Court to prescribe the sums to be paid in their respective counties by every hawker, or pedler of clocks, or other goods, wares, or merchandise of any kind whatever, for a license for every wagon, pack horse, carriage or cart, by them

employed for pedling, but the sum to be paid for the license was, in no county, to be less than fifty dollars. Under that act the different classes of pedlers might be required to pay the same or different sums for a license, as the Commissioners Courts might prescribe. There is no doubt, however, but that those courts were in the habit of prescribing different sums, so that the pedlers who employed wagons in the business had to pay the largest sum, with discriminations as to the rest. But by the second section of that act, if any pedler should barter, exchange or sell any clocks, &c., without first taking out a license, agreeably to the first section, he should forfeit and pay, for every article sold, the sum of two hundred dollars. So that the pedler, whether he belonged to one class or another, was to pay the same penalty for selling without license. For this reason it was, perhaps, not necessary for an indictment under that act to designate the class to which the pedler belonged.—See May v. The State, 9 Ala. 167. This brings us to the act of 1848, which, in respect of the point we are considering, is inconsistent with and therefore repeals all other acts, and we are entirely satisfied that this indictment is to be tried by that act; for the offence was committed and the indictment was found after it became the law. It provides that every person engaged, or intending to engage in any of the kinds of business thereinafter mentioned, should, before he engaged therein, procure from the clerk of the County Court, in which he intends to do such business, a license for the same, to be operative for one year from the date thereof, for which the prices thereinafter mentioned were to be paid—and the price of a license for hawking and pedling was afterwards by the same act prescribed in this language: "for hawking and pedling, for each boat two hundred dollars ; for each wagon in each county, seventy-five dollars ; for each horse in each county, when the business is pursued on horse back, forty dollars, and when pursued on foot twenty dollars," with a proviso which is not now material. The part of the act which prescribes the penalty is "and in default of procuring such license, the person or persons so doing such business, or following such employment, shall be liable to pay treble the sum required for such license, to be recovered by indictment," &c. Now, this indictment does not designate the class to which the pedler belonged—that is to say, it omits to state whether he used, in the

business he was pursuing, a boat, wagon, or horse, or pursued it on foot, although the price of the license and the sum to be recovered by indictment is different in each of the cases, and the difference is fixed by the act itself—and in this the act of 1848 differs from the act of 1837. Nothing, in this case, was involved in the issue of fact, but the question of the defendant's guilt. The fine was not to be assessed by the jury in this case, for the statute had prescribed its amount and it was the proper business of the court to render judgment for the amount—that being the proper business of the courts in all cases of fines at the common law. They were never assessed by the jury.—Chitty's Crim. Law, 808. The assessment of the fine in this case by the jury was mere surplusage and is no basis for the court to act on. The case is as if the jury had not assessed the fine. This indictment does not enable the court to render any judgment, because the court cannot ascertain from it the specific offence of which the defendant is guilty. It is wholly uncertain whether he pursued his business as a pedler by boat, wagon, horse, or on foot, and therefore it is entirely uncertain which of the fines prescribed by the statute should have been imposed by the Court.—Mr. Chitty states the general rule, we think, with perfect accuracy: "It is a general rule, that all indictments ought to charge a man with a particular specified offence, and not with being an offender in general, for no one can know what defence to make to a charge which is thus uncertain; it cannot be pleaded in bar or abatement of a subsequent prosecution, nor can it appear that the facts given in evidence against a defendant on such general accusation are the same of which the indictors have accused him, nor will it judicially appear to the court what punishment is proper on conviction."— 1 Chitty's Crim. Law. 230. If we try this indictment by either of the principles expressed in this quotation, but more especially the last, it is bad. Therefore the judgment is reversed.